JUDGE DAVID BRIONES

**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION**

FILED

2022 OCT 28  PM 3: 29

CLERK. U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
          DEPUTY

| | |
|---|---|
| **ERIK SALAIZ,** §<br><br>**Plaintiff,** §<br><br>v. §<br><br>**ELITE HEALTH INVESTMENTS, INC.** d/b/a §<br>**ELITE MEDICARE ADVISORS,** a Florida §<br>Corporation, **CODY LUCAS**, and **ZACHARY** §<br>**PALUMBO** §<br><br>**Defendants.** § | EP22CV0390 |

## PLAINTIFF'S ORIGINAL COMPLAINT

### PARTIES

1.      The Plaintiff is ERIK SALAIZ ("Plaintiff") a natural person, resident of the Western

District of Texas, and was present in Texas for all calls, in this case in El Paso County, Texas.

2.      Defendant ELITE HEALTH INVESTMENTS, INC. d/b/a ELITE MEDICARE

ADVISORS ("Elite" "Defendant") is a corporation organized and existing under the laws of

Florida and can be served via registered agent Zachary Palumbo at 900 N. Federal Hwy, Suite

220, Boca Raton, Florida 33432.

3.      Defendant CODY LUCAS ("Lucas") is a natural person, resident of Florida, and a

President of Defendant Elite and can be served at 17244 Antigua Point Way, Boca Raton, Florida

33487.

4.      Defendant ZACHARY PALUMBO ("Palumbo") is a natural person, resident of Florida,

and a President of Defendant Elite and can be served at 2401 NE 45th Street, Lighthouse Point,

1

Florida 33064.

5.     Defendants Elite, Lucas, and Palumbo are hereinafter referred to collectively as

("Defendants").

## JURISDICTION AND VENUE

6.     Jurisdiction.  This Court has federal-question subject matter jurisdiction over Plaintiff's

TCPA claims pursuant to 28 U.S.C. § 1331 because the TCPA is a federal statute. *Mims v. Arrow*

*Fin. Servs., LLC*, 565 U.S. 368, 372 (2012). Defendants' telemarketing robocalls to Plaintiff;

adds little complexity to the case.

7.     Personal Jurisdiction.  This Court has general personal jurisdiction over the Defendants

because they have repeatedly authorized telemarketers to place calls on their behalf to Texas

residents, and derive revenue from Texas residents, and they sell goods and services to Texas

residents, including the Plaintiff.

8.     Venue.  Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1)-(2) because a

substantial part of the events giving rise to the claims—the calls and sale of goods and services

directed at Texas residents, including the Plaintiff—occurred in this District and because the

Plaintiff resides in this District.  Residing in the Western District of Texas when he received a

substantial if not every single call on behalf of the Defendants that are the subject matter of this

lawsuit.

9.     This Court has venue over the Defendants because the calls at issue were sent on behalf

of the above-named Defendants to the Plaintiff, a Texas resident.

## THE TELEPHONE CONSUMER PROTECTION ACT
## OF 1991, 47 U.S.C. § 227

10.    In 1991, Congress enacted the TCPA to restrict the use of sophisticated telemarketing

equipment that could target millions of consumers *en masse*.  Congress found that these calls were not only a nuisance and an invasion of privacy to consumers specifically but were also a threat to interstate commerce generally.  *See* S. Rep. No. 102-178, at 2-3 (1991), as reprinted in 1991 U.S.C.C.A.N. 1968, 1969-71.

11.    The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice ... to any telephone number assigned to a ... cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii).

12.    The TCPA makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes, is made solely pursuant to the collection of a debt owed to or guaranteed by the United States, or is exempted by rule or order" of the Federal Communication Commission ("FCC"). 47 U.S.C. § 227(b)(1)(B).

13.    The TCPA provides a private cause of action to persons who receive calls in violation of § 227(b). 47 U.S.C. § 227(b)(3).

14.    Separately, the TCPA bans telemarketing calls without a do-not-call policy available upon demand. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(d)(1).[1]

15.    The TCPA provides a private cause of action to persons who receive calls in violation of § 227(c) or a regulation promulgated thereunder. 47 U.S.C. § 227(c)(5).

16.    According to findings of the FCC, the agency vested by Congress with authority to issue

---

[1] *See* Code of Federal Regulations, Title 47, Parts 40 to 60, at 425 (2017) (codifying a June 26, 2003 FCC order).

regulations implementing the TCPA, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls and can be costly and inconvenient.

17.     The FCC also recognizes that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003).

18.     The FCC requires "prior express written consent" for all autodialed or prerecorded telemarketing robocalls to wireless numbers and residential lines.  In particular:[A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer:  (1) received clear and conspicuous disclosure of the consequences of providing the requested consent, *i.e.*, that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates. In addition, the written agreement must be obtained without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.

19.     *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd. 1830, 1844 ¶ 33 (2012) (footnote and internal quotation marks omitted). FCC regulations "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

20.     The FCC confirmed this principle in 2013, when it explained that "a seller ... may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *In the Matter of the Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6574 ¶ 1 (2013).

21.     Under the TCPA, a text message is a call. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 – 52 (9th Cir. 2009).

22.     A corporate officer involved in the telemarketing at issue may be personally liable under the TCPA. *E.g.*, *Jackson Five Star Catering, Inc. v. Beason*, Case No. 10-10010, 2013 U.S. Dist. LEXIS 159985, at *10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate actors can be individually liable for violating the TCPA where they had direct, personal participation in or personally authorized the conduct found to have violated the statute." (internal quotation marks omitted)); *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415 – 16 (D. Md. 2011) ("If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force.").

## FACTUAL ALLEGATIONS

23.     Plaintiff's personal cell phone (XXX) XXX-1527 has been registered on the National Do-Not-Call Registry since March 6, 2022.

24.     Plaintiff never asked the National Do-Not-Call Registry administrator to remove him from the National Do-Not-Call Registry and Plaintiff was on the National Do-Not-Call Registry at all times relevant to this Complaint.

25.     According to the Florida Department of State website https://dos.sunbiz.org/ficinam.html "Elite Medicare Advisors" is a fictitious name owned and controlled by Defendant Elite. *See Exhibit A.*

26.     Defendant Elite is owned and controlled by Defendants Lucas and Palumbo.

27.     Defendant Elite offers additional Medicare products to senior citizens with Medicare. *See Exhibit B.*

28.     As part of their marketing, Defendants Lucas and Palumbo hire and authorize telemarketers to make illegal robocalls with a prerecorded voice message to thousands of consumers *en masse* to solicit additional Medicare products on behalf of Defendant Elite.

29.     Defendants Lucas and Palumbo approve of the contracts with the telemarketers.

30.     Defendants Lucas and Palumbo authorize the payments to the telemarketers.

31.     Defendants Lucas and Palumbo pay the telemarketers out of bank accounts they own and control.

32.     Defendants Lucas and Palumbo approve of the prerecorded voice message scripts their telemarketers use soliciting Medicare products on behalf of Defendant Elite.

33.     Each and every robocall Plaintiff received from telemarketers calling on behalf of Defendants all started with the same prerecorded voice message that stated,

"Hi this is Jennifer with US Medicare benefits how are you so far? That's good may God Bless you and give you good health. Well, the reason for my call is that you have been qualified to get additional benefits on your Medicare as it's the new enrollment window and we are calling to make you aware of these benefits, so I believe you do have Medicare parts A and B right? How old are you? We are not asking you to do anything right now these plans are recently approved in your state, and we are providing you free information on them alright let me transfer this call to the verification department and they will assist you."

34.     The prerecorded voice message does not identify Defendant Elite.

35.     Plaintiff has never had any relationship with Defendants or has ever been a customer of Defendants and never gave them his prior express written consent to receive the robocalls alleged in this case.

36.     Defendant Elite has been sued prior to this lawsuit for violating the TCPA *Moore v. Elite Health Investments, Inc.,* No. 1:22-cv-04362 (N.D.IL., Aug. 17, 2022) and continues their illegal behavior because violating the TCPA benefits Defendants financially.

37.     Plaintiff received at least seven (7) robocalls with a prerecorded voice message to his personal cell phone 1527 within a two-month period from telemarketers calling soliciting Medicare products on behalf of Defendants ("the calls").

38.     With information and belief Plaintiff has received more robocalls from telemarketers soliciting additional Medicare benefits calling on behalf of Defendants that are unknown to Plaintiff at this time but will be revealed during discovery.

39.     On July 19, 2022, Plaintiff received one of multiple robocalls to his personal cell phone 1527 from telemarketers calling on behalf of Defendants from phone number (915) 254-306-2611.

40.     Plaintiff answered and heard a prerecorded voice message "Hi this is Jennifer with US Medicare benefits."

41.     Plaintiff was extremely aggravated and annoyed for continuing to receive the same prerecorded voice message and followed the prompts for the sole purpose of identifying the company responsible for the calls.

42.     Plaintiff was then transferred to a female telemarketer calling on behalf of Defendants named Samantha.

43.     Samantha falsely identified the company she was calling on behalf of and advised Plaintiff she was calling from the "Medicare verification department."

44.     Samantha advised Plaintiff that right now they are providing "additional benefits" on Plaintiff's Medicare.

45.     Samantha asked Plaintiff if he had Medicare parts A and B. Plaintiff does not have Medicare however advised Samantha that he did for the sole purpose of identifying the company responsible for the calls.

46.     With the permission of a family member Plaintiff knows has Medicare, Plaintiff asked the individual if he can borrow their Medicare information for the sole purpose of identifying the company responsible for the calls. Plaintiff did not borrow the individuals Medicare information to gain any additional Medicare benefits or to perform any Medicare fraud that would violate any laws or cause the US government any financial loss.

47.     Samantha then collected Plaintiff's address, name, asked Plaintiff qualifying Medicare questions, and solicited Plaintiff for additional Medicare products on behalf of Defendants.

48.     Samantha advised Plaintiff she will be transferring him to a "license agent" that will go over Plaintiff's additional Medicare benefits.

49.     Plaintiff was then transferred to a "licensed agent" from Defendant Elite named Jason Darrow.

50.     Jason accepted the transfer from Samantha which confirmed Defendants Lucas and Palumbo hire telemarketers to make robocalls with prerecorded voice messages to consumers to solicit additional Medicare benefits on behalf of Defendant Elite.

51.     Jason advised Plaintiff he is a licensed Medicare specialist and solicited Plaintiff for additional Medicare benefits on behalf of Defendants.

52.     Jason advised Plaintiff he represents a brokerage, and the name of his company is Elite Medicare Advisors which revealed the company and individuals responsible for the calls.

53.     Whenever Defendant Elite makes a change to a consumers Medicare plan by adding additional Medicare benefits it benefits all Defendants financially as they are paid the consumers Medicare premium from the government.

54.     Defendants telemarketers on three (3) occasions used a local area code (915) where Plaintiff resides to trick him into thinking the call was local.

55.    Table below displays the calls made to Plaintiff on behalf of Defendants.

| **Number** | **Date** | **Time** | **Caller ID** | **Notes** |
|:---:|:---:|:---:|:---:|:---|
| **1.** | 05/19/2022 | 9:46 AM | 915-910-2459 | Prerecorded voice message Jennifer with US Medicare benefits. |
| **2.** | 06/01/2022 | 9:26 AM | 409-232-8879 | Prerecorded voice message Jennifer with US Medicare benefits. |
| **3.** | 06/07/2022 | 4:40 PM | 984-256-8488 | Prerecorded voice message Jennifer with US Medicare benefits. |
| **4.** | 06/15/2022 | 9:50 AM | 915-985-6221 | Prerecorded voice message Jennifer with US Medicare benefits. |
| **5.** | 06/15/2022 | 11:11 AM | 915-986-7349 | Prerecorded voice message Jennifer with US Medicare benefits. |
| **6.** | 06/24/2022 | 1:39 PM | 531-213-1126 | Prerecorded voice message Jennifer with US Medicare benefits. |
| **7.** | 07/19/2022 | 9:33 AM | 254-306-2611 | Prerecorded voice message Jennifer with US Medicare benefits. Transferred to telemarketer Samantha then rep Jason Darrow. |

56.     Defendants employ outrageous, aggressive, and illegal sales techniques that violate multiple federal laws and state consumer statutes.

57.     Defendants do not have a solicitation registration certificate on file with the Texas Secretary of State as required to make telephone solicitations to Texas residents.  Plaintiff is a Texas resident.

58.     The https://direct.sos.state.tx.us/telephone/telephonesearch.asp site ("Texas Registration Database") does not contain any of the Defendants registration.

59.     Defendants don't qualify for an exemption under § 302.053.

60.     The calls constituted "calls" under the TCPA that were not made for emergency purposes.

61.     Each and every call was placed while knowingly ignoring the national do-not-call registry.  Each and every call was placed without training their agents/employees on the use of an internal do-not-call policy

62.     Defendants never sent Mr. Salaiz any do-not-call policy.  Plaintiff sent an internal do-not-call policy request to Defendants to help@emedicareadvisors.com on July 19, 2022, which is an email listed on their website they own and control https://emedicareadvisors.com and to email zpalumbo@emedicareadvisors.com which is an email owned and controlled by one of Defendant Palumbo.

63.     Plaintiff has limited data storage capacity on his cellular telephone. Incoming telemarketing calls consumed part of this capacity.

64.     No emergency necessitated the calls.

65.     On information and belief, Defendants did not train its agents who engaged in telemarketing on the existence and use of any do-not-call list.

## INJURY, HARM, DAMAGES, and ACTUAL DAMAGES

## AS A RESULT OF THE CALLS

66.     Defendants' calls harmed the Plaintiff by causing the very harm that Congress sought to prevent—a "nuisance and invasion of privacy."

67.     Defendants' calls harmed the Plaintiff by trespassing upon and interfering with Plaintiff's rights and interests in Plaintiff's cellular telephone.

68.     Defendants' calls harmed the Plaintiff by intruding upon Plaintiff's seclusion.

69.     Plaintiff has been harmed, injured, and damages by the calls including, but not limited to: reduced device storage, reduced data plan usage, anger, frustration, invasion of privacy, and more frequent charging of his cell phone.

## VICARIOUS LIABILITY OF ALL DEFENDANTS

70.     Defendants are vicariously liable for the telemarketing calls that generated the lead for Defendants.

71.     The FCC is tasked with promulgating rules and orders related to enforcement of the TCPA. 47 U.S.C. § 227(b)(2).

72.     The FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

73.     The FCC reiterated that a company on whose behalf a telephone call is made bears the responsibility for any violations. *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 23 FCC Rcd. 559, 565 ¶ 10 (2008) (recognizing "on behalf

of" liability in the context of an autodialed or prerecorded message call sent to a consumer by a

third party on another entity's behalf under 47 U.S.C. § 227(b)).

74.     The FCC confirmed this principle in a declaratory ruling holding that sellers such as Post

may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its
> telemarketing activities to unsupervised third parties would leave
> consumers in many cases without an effective remedy for telemarketing
> intrusions. This would particularly be so if the telemarketers were
> judgment proof, unidentifiable, or located outside the United States, as is
> often the case. Even where third-party telemarketers are identifiable,
> solvent, and amenable to judgment limiting liability to the telemarketer
> that physically places the call would make enforcement in many cases
> substantially more expensive and less efficient, since consumers (or law
> enforcement agencies) would be required to sue each marketer separately
> in order to obtain effective relief. As the FTC noted, because sellers may
> have thousands of independent marketers, suing one or a few of them is
> unlikely to make a substantive difference for consumer privacy.

*In re DISH Network, LLC*, 28 FCC Rcd. 6574, 6588 ¶ 37 (2013) (footnote omitted) (alteration

marks and internal quotation marks omitted).

75.     More specifically, *Dish* held that, even in the absence of evidence of a formal contractual

relationship between the seller and the telemarketer, a seller is liable for telemarketing calls if the

telemarketer "has apparent (if not actual) authority" to make the calls.  *Id.* at 6586 ¶ 34.

76.     The ruling rejected a narrow view of TCPA liability, including the assertion that a seller's

liability requires a finding of formal agency and immediate direction and control over the third-

party who placed the telemarketing call. *Id.* at 6587 ¶ 36 & n.107.

77.     To the contrary, the FCC—armed with extensive data about robocallers and Americans'

complaints about them—determined that vicarious liability is essential to serve the TCPA's

remedial purpose of protecting Americans from "unwanted telemarketing invasions." *Id.* at 6587 ¶ 36.

78.    Vicarious liability is important because reputable, traceable, and solvent companies that benefit from illegal telemarketing are "in the best position to monitor and police TCPA compliance by third-party telemarketers." *Id.* at 6588 ¶ 37.

79.    Defendants are legally responsible for ensuring that the telemarketers/agents that make telemarketing calls on their behalf comply with the TCPA when so doing.

80.    Defendants knowingly and actively accepted business that originated through illegal telemarketing.

81.    Defendants knew (or reasonably should have known) that its telemarketers/agents were violating the TCPA on their behalf but failed to take effective steps within their power to force them to cease that conduct.

82.    By hiring a company to make calls on their behalf, Defendants "manifest[ed] assent to another person . . . that the agent shall act on the principal's behalf and subject to the principal's control" as described in the Restatement (Third) of Agency ("Restatement").

83.    Moreover, Defendants maintained interim control over the actions of its telemarketers/agents.

84.    For example, Defendants had absolute control over whether, and under what circumstances, they would accept a customer from their telemarketers/agents.

85.    Furthermore, Defendants had day-to-day control over the actions of its telemarketers/agents, including the ability to prohibit them from using prerecorded voice messages to contact potential customers of Defendants and the ability to require them to respect the National Do Not Call Registry.

86.     Defendants also gave interim instructions to its telemarketers/agents by providing lead-qualifying instructions and lead volume limits.

87.     Defendants donned its telemarketers/agents with apparent authority to make the calls at issue.

88.     Apparent authority turns on whether a third party believes the principal authorized its agent to act and the belief is "traceable" to a manifestation of the principal. Restatement § 2.03 cmt. c.

89.     "[A]pparent authority can arise in multiple ways, and does *not* require that 'a principal's manifestation must be directed to a specific third party in a communication made directly to that person.'" *Dish*, 28 FCC Rcd. at 6586 ¶ 34 n.102 (quoting Restatement § 2.03 cmt. c).

90.     A principal may make a manifestation "by directing an agent to make statements to third parties or directing or designating an agent to perform acts or conduct negotiations, placing an agent in a position within an organization, or placing an agent in charge of a transaction or situation." Restatement § 2.03 cmt. c.

91.     Defendants are the liable party as the direct beneficiary of the illegal telemarketing calls as they stood to gain Plaintiff as a customer when Defendant Elite solicited Plaintiff for additional Medicare benefits.

### DEFENDANTS LUCAS AND PALUMBO ARE PERSONALLY LIABLE

92.     Defendants Lucas and Palumbo refuse to take any action to stop or curtail the unlawful sales practices and illegal unauthorized phone calls because these practices benefit Defendants Lucas and Palumbo financially.

93.     "If the officer directly participated in or authorized the statutory violation, even though

acting on behalf of the corporation, he may be personally liable.  See *United States v Pollution*

*Serv. Of Oswego, Inc.*, 763 F.2d 133, 134-135 (2nd Cir.1985)

94.     The "well-settled" tort rule provides that "when corporate officers directly participate in

or authorized the commission of a wrongful act, even if the act is done on behalf of the

corporation, they may be personally liable."  *General Motos Acceptance Corp. v. Bates*, 954 F.2d

1081, 1085 (5th Cir. 1992).  The Fifth Circuit has elaborated that "the thrust of the general [tort]

rule is that the officer to be held personally liable must have some direct, personal participation

in the tort, as where the defendant was the 'guiding spirit' behind the wrongful conduct....or the

'central figure' in the challenged corporate activity."  *Mozingo v. Correct Mfg. Corp.*, 752 F.2d

168, 174 (5th Cirt. 1985) (Citing *Escude Cruz v. Ortho Pharmaceutical Corp.*, 619 F. 2d 902, 907

(1st Cir.1980)) (Citing *Texas v. American Blastfax, Inc.*, 164 F. Supp. 2d 892 (W.D. Tex. 2001)

95.     Quoting Texas v. American Blastfax:

> The Court finds the above principles applicable to the TCPA that is, an officer may be
> personally liable under the TCPA if he had direct, personal participation in or
> personally authorized the conduct found to have violated the statute, and was not
> merely tangentially involved.  Individuals who directly (and here, knowingly and
> willfully) violate the TCPA should not escape liability solely because they are
> corporate officers.  As the State persuasive argues, to hold otherwise would allow the
> individual defendants to simply dissolve Blastfax, set-up a new shell corporation, and
> repeat their conduct.  Congress surely did not intend to permit such a result in passing
> the TCPA.

> To be clear, the Court finds Greg and Michael Horne were the "guiding spirits" an the
> "central figures" behind the TCPA violations.  They were the two persons who
> controlled all of Blastfax's day-to-day operations.  They both had direct, personal
> involvement in and ultimate control over every aspect of Blastfax's wrongful contuct
> that violate the TCPA, and/or directly controlled and authorized this conduct.  And
> they did so with their eyes and pocketbooks wide open.  After October 5, 2000, Greg
> and Michael Horne had good reason to believe they were running a business that

violated the TCPA.  On February 9, 2001, they knew they were.  Yet they continued to direct their company to send unsolicited intrastate fax advertisements.  This is fare more than a simple derivative liability case.  Accordingly, the Court *899 holds defendants Greg and Michael Horne are jointly and severally liable with Defendant Blastfax, Inc., for all TCPA damages in this lawsuit." Texas v. American Blastfax, Inc., 164 F. Supp. 2d 892 (W.D. Tex. 2001)

96.     The Same Court held that corporate officers were also personally liable for DTPA violations

> The State contends Greg and Michael Horne are personally liable for any DTPA damages because they were solely responsible for the violating conduct.....For the same reasons discussed in finding the individual defendants personally liable under the TCPA, the Court agrees.  See, e.g., *Barclay v. Johnson*, 686 S.W.2d 334, 336-37 (Tex. Civ. App.-Houston [1ST Dist.] 1985, no writ) (finding personal liability for corporate officer in DTPA misrepresentation claim, based on general rule that "a corporate agent knowingly participating in a tortious of fraudulent act may be held individually liable, even though he performed the act as an agent for the corporation......Accordingly, the Court finds defendants American Blastfax, Inc., Greg Horne and Michael Horne are jointly and severally liable for $6,000 in damages for their violations of the DTPA." *Texas v. American Blastfax, Inc.*, 164 F. Supp. 2d 892 (W.D. Tex. 2001

97.     At all times material to the Complaint, acting alone or in concert with others, Defendants Lucas and Palumbo have formulated, directed, controlled, had the authority to control, or participated in the acts and practices of Defendant Elite including the acts or practices set forth in this Complaint.

98.     Defendants Lucas and Palumbo are the principal director's and operator's of Defendant Elite, controls the day-to-day operations of Defendant Elite and directed their representatives, employees, agents, salespersons, and telemarketers to make TCPA violating phone calls to solicit their additional Medicare products on behalf of Defendants.

99.     Defendants Lucas and Palumbo knowingly and willfully ignore the law. These violations are the direct result of the instructions Defendants Lucas and Palumbo has given to their

telemarketers, representatives, agents, employees, solicitors, salespersons, and others that carry out their schemes.

100. Defendants Lucas and Palumbo are not merely a bystander and are the mastermind that scheme, planned, directed, initiated, and controlled the illegal and fraudulent behavior.

101. Defendants Lucas and Palumbo are well aware their conduct violated the TCPA and Tex. DPTA and refused to alter their behavior. Defendants Lucas and Palumbo are the sole directors of Defendant Elite and the only persons with the power to make the unlawful, fraudulent, and unethical behavior stop. Yet, Defendants Lucas and Palumbo have taken no steps to stop the behavior because this behavior benefits Defendants financially.

102. Defendants Lucas and Palumbo should be held jointly and severally liable for both the TCPA violations and via the Tex. DTPA because they actually committed the conduct that violated the TCPA and Tex. DTPA, and/or they actively oversaw and directed this conduct.

103. Defendants Lucas and Palumbo should be held liable because to do otherwise would simply allow them to dissolve Defendant Elite and set up a new corporation and repeat their conduct. This would result in both the TCPA and DTPA being unenforceable.

## **THE PLAINTIFF'S CELL PHONE IS A RESIDENTIAL NUMBER**

104. The calls were to the Plaintiff's cellular phone 1527 which is the Plaintiff's personal cell phone that he uses for personal, family, and household use. The Plaintiff maintains no landline phones at his residence and has not done so for at least 15 years and primarily relies on cellular phone to communicate with friends and family. The Plaintiff also uses his cell phone for

navigation purposes, sending and receiving emails, timing food when cooking, and sending and receiving text messages. The Plaintiff further has his cell phone registered in his personal name, pays the cell phone from his personal accounts, and the phone is not primarily used for any business purpose.

**THE TEXAS BUSINESS AND COMMERCE CODE § 305.053**

105.    The Texas Business and Commerce code has an analogous portion that is related to the TCPA and was violated in this case.

106.    The Plaintiff may seek damages under this Texas law for violations of 47 USC 227 or subchapter A and seek $500 in statutory damages or $1500 for willful or knowing damages.

**VIOLATIONS OF THE TEXAS BUSINESS AND COMMERCE CODE § 302.101**

107.    The actions of the Defendant violated the Texas Business and Commerce Code 302.101 by placing solicitation phone calls to a Texas resident without having a registration certificate and bond on file with the Texas Secretary of State.

108.    Texas Business and Commerce Code § 302.101 provides a private right of action.  A violation of Chapter 302 "is a false, misleading, or deceptive act or practice under Subchapter E, Chapter 17" and is enforceable as such: "A public or private right or remedy prescribed by Subchapter E, Chapter 17, may be used to enforce [Chapter 302." Tex. Bus. & Com. Code § 302.303.

109.    The use or employment by any person of a false, misleading, or deceptive act or practice" causes "economic damages or damages for mental anguish." Tex. Bus. & Com. Code § 17.50.

110.    Texas Business and Commerce Code §302.101 states that a person (1) "may not make a telephone solicitation" (a) "from a location in [Texas]" or (b) "to a purchaser located in [Texas],"

(2) "unless the [person] holds a registration certificate for the business location from which the telephone solicitation is made."  Tex. Bus. & Com. Code § 302.101(a).

111.    Under Texas Business and Commerce Code § 302.302 Plaintiff is entitled to seek damages of up to $5000 per violation of §302.101.

## CAUSES OF ACTION

### COUNT ONE:
**Violations of the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), by Automated Telemarketing Without Prior Express Written Consent**

112.    Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

113.    Defendants and/or their telemarketers or agents violated the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), at least seven (7) times by placing non-emergency telemarketing calls to Plaintiff's cellular telephone number using a prerecorded voice message without prior express written consent.

114.    Plaintiff was statutorily damaged at seven (7) times under 47 U.S.C. § 227(b)(3)(B) by the Defendants by the telephone calls described above, in the amount of $500.00 per call.

115.    Plaintiff was further statutorily damaged because the Defendants willfully or knowingly violated this subsection of the TCPA. Plaintiff requests that the court treble the damage amount to $1,500.00 as permitted under U.S.C. § 227(b)(3)(C) for each and every willful and/or knowing violation.

116.    Plaintiff is also entitled to and does seek an injunction prohibiting the Defendants and their telemarketers and agents from violating the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), by placing non-emergency telemarketing calls to any cellular telephone number using a prerecorded voice message without prior express written consent.

## COUNT TWO:

## (Violation of the TCPA "Sales Call/DNC" Prohibition, 47 U.S.C. 227(c), and 47 C.F.R. § 64.1200(C))

117.    Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

118.    Defendants called Plaintiff's private residential telephone number which was successfully registered on the National Do-Not-Call Registry more than thirty-one (31) days prior to the calls for the purposes of commercial solicitation, in violation of 47 U.S.C. § 227(c)(3)(F), and 47 C.F.R. § 64.1200(c)(2).

119.    Plaintiff was statutorily damaged at least seven (7) times under 47 U.S.C. § 227(c)(3)(F) by the Defendants by the telemarketing calls described above, in the amount of $500.00 per call.

120.    Plaintiff was further statutorily damaged because Defendants willfully and/ or knowingly violated this subsection of the TCPA. Plaintiff requests that the court treble the damage amount as permitted under U.S.C. § 227(c)(5) for each and every willful and/or knowing violation.

121.    Plaintiff is entitled to an award up to $1,500 in damages for each knowing or willful violation of 47 U.S.C. § 227(c)(3)(F).

## COUNT THREE:

### Telemarketing Without Mandated Safeguards, 47 C.F.R. § 64.1200(d)

### (Against All Defendants)

122.    Plaintiff incorporates the forgoing allegations as if fully set forth herein.

123.    The foregoing acts and omissions of the Defendants and/or their telemarketers or agents constitute multiple violations of FCC regulations by making telemarketing solicitations despite lacking the following:

    a.  A written policy, available upon demand, for maintaining a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(1)[2];

    b.  Training for the individuals involved in the telemarketing on the existence of and use of a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(2)[3]; and,

    c.  In the solicitations, the name of the individual caller and the name of the person or entity on whose behalf the call is being made, in violation of 47 C.F.R. § 64.1200(d)(4).[4]

124.    Plaintiff is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(c)(5)(B).

125.    Plaintiff is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. 47 U.S.C. § 227(c)(5).

### COUNT FOUR:

### (Violations of The Texas Business and Commerce Code 305.053)

126.    Plaintiff incorporates the foregoing allegations as if set forth herein.

127.    The foregoing acts and omissions of Defendants and/or their telemarketers or agents constitute multiple violations of the **Texas Business and Commerce Code 305.053,** by making non-emergency telemarketing robocalls to Plaintiff's cellular telephone number without his prior express written consent in violation of 47 U.S.C. § 227 et seq. The Defendants violated 47 U.S.C. § 227(d) and 47 U.S.C. § 227(d)(3) and 47 U.S.C. § 227(e) by using a prerecorded voice message that does not comply with the technical and procedural standards under this subsection.

---

[2] *See id.* at 425 (codifying a June 26, 2003 FCC order).
[3] *See id.* at 425 (codifying a June 26, 2003 FCC order).
[4] *See id.* at 425 (codifying a June 26, 2003 FCC order

128.    Plaintiff seeks for himself an award of at least $500.00 in damages for each such violation. **Texas Business and Commerce Code 305.053(b).**

129.    Plaintiff seeks for himself an award of up to $1,500.00 in damages for each such knowing or willful violation. **Texas Business and Commerce Code 305.053(c).**

### COUNT FIVE

**(Violations of Texas Business and Commerce Code 302.101)**
**Failure to obtain a Telephone Solicitation Registration Certificate**

130.    Plaintiff incorporates and realleges, as though fully set forth herein, each of the paragraphs above.

113.    Defendants made at least seven (7) solicitation sales calls to Plaintiff without having a valid telephone solicitation as required under Tex. Bus. Com. Code 302.101.

114.    As a result of Defendants and their telemarketers' violations of Tex. Bus. and Com. Code 302.101 Plaintiff may seek damages of up to $5,000 for each violation.  Tex. Bus. and Com. Code 302.302(a).

115.    As a result of Defendants and their agents violations of Tex. Bus. and Com. Code 302.101 Plaintiff may seek all reasonable costs of prosecuting this action, including court costs, deposition costs, and witness fees.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff Erik Salaiz prays for judgment against the Defendants jointly and severally as follows:

A.     Leave to amend this Complaint to name additional DOESs as they are identified and to conform to the evidence presented at trial;

B.     A declaration that actions complained of herein by Defendants violates the TCPA;

C.     An injunction enjoining Defendants and their affiliates and agents from engaging in the unlawful conduct set forth herein;

D.     An award of $1500 per call in statutory damages arising from the TCPA §227(b) intentional violations jointly and severally against the corporation and individuals for seven calls.

E.     An award of $1500 per call in statutory damages arising from the TCPA §227(c) intentional violations jointly and severally against the corporation and individuals for seven calls.

F.     An award to Mr. Salaiz of damages, as allowed by law under the TCPA;

G.     An award to Mr. Salaiz of interest, costs, and attorneys' fees, as allowed by law and equity.

H.     Such further relief as the Court deems necessary, just, and proper.

October 28, 2022,                                   Respectfully submitted,


                                                    Erik Salaiz
                                                    Plaintiff, Pro Se
                                                    319 Valley Fair Way
                                                    El Paso, Texas 79907
                                                    915-929-1527
                                                    Salaiz.ep@gmail.com